## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**LORI D. ROACH**                                                      **PLAINTIFF**

**V.**                                 **NO. 3:23-CV-00135-JTK**

**SOCIAL SECURITY ADMINISTRATION**                        **DEFENDANT**

### ORDER

## I. Introduction:

Plaintiff, Megan Roach ("Roach"), applied for disability income and supplemental security income on January 23, 2020, alleging a disability onset date of March 31, 2019. (Tr. at 11). The applications were denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Roach's applications in a written decision dated June 29, 2022. (Tr. at 11-25). The Appeals Council declined to review the ALJ's decision. (Tr. at 1-5). The ALJ's decision now stands as the final decision of the Commissioner, and Roach has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.   <u>The Commissioner's Decision</u>:

The ALJ found that Roach had not engaged in substantial gainful activity since the alleged onset date of March 31, 2019.[2] (Tr. at 14). The ALJ found, at Step Two, that Roach had the following severe impairments: major depressive disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), fibromyalgia, migraine headaches, osteoarthritis of the knee, cervical degenerative disc disease, and obesity. *Id*.

After finding that Roach's impairments did not meet or equal a listed impairment (Tr. at 14-16),[3] the ALJ determined that Roach had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she is unable to climb ladders, ropes, or scaffolds; (2) she can no more than occasionally stoop, kneel, crouch, and crawl; (3) she is unable to operate lower extremity foot controls; (4) she should avoid exposure to concentrated vibration and direct sunlight; (5) she can perform simple, routine, and repetitive task

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] 20 C.F.R. §§404.1520(d), 494.1525, 404.1526, 416.920(d), 416.925, and 416.926.

occupations; and (6) the supervision must be simple, direct, and concrete. (Tr. at 18).

At Step Four, the ALJ determined that Roach was unable to perform her past relevant work. (Tr. at 23-25). Utilizing the testimony of a Vocational Expert ("VE"), the ALJ next determined that, based on Roach's age, education, work experience, and RFC, she was able to perform a number of jobs in the national economy. *Id*. Therefore, the ALJ concluded that Roach was not disabled. *Id*.

## III. <u>Discussion</u>:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Roach's Arguments on Appeal

Roach contends that the evidence supporting the ALJ's decision is less than substantial. She argues that the ALJ failed to consider her impairments in combination, the ALJ erred at Step Five, and the ALJ failed to conduct a proper psychiatric review technique ("PRT").

Roach suffered from mental impairments that made it hard to focus and stay on task. (Tr. at 16-17). She said she had trouble getting along with family and friends. *Id.* Roach testified that she had crying spells often. *Id.*

The ALJ recognized these impairments, but also noted that mental status examinations were often grossly normal, with logical thoughts and normal mood and affect. (Tr. at 19-20, 505, 529, 550-559). She did not seek regular psychiatric

treatment, and she failed to comply with treatment plans (she canceled therapy appointments) and she only attended therapy twice in 2022. (Tr. at 71, 547-551, 652-663, 669, 695. 715-726). When she stopped taking mental health medication, her symptoms got worse. *Id*. Moreover, Roach admitted she could drive, shop in stores, prepare simple meals, wash dishes, and attend to personal hygiene.[4] (Tr. at 52-53, 415-419). A behavioral health treatment note shows that she had no functional limitations as of March 2022. (Tr. at 787).

The ALJ also observed that physical impairments were not disabling. Roach had knee and back pain, but in February 2022, she had normal musculoskeletal range of motion, and no tenderness on examination. (Tr. at 732, 739). In March 2020, she denied back pain, joint pain, stiffness, or diminished strength. (Tr. at 645-646). She had a normal gait. Treatment for physical impairments was conservative, consisting of steroid injections and medications. (Tr. at 20-22). As for migraines, the record reflects that this condition was relatively well-controlled when Roach took medication. *Id*.

The ALJ considered all of Roach's impairments in combination, contrary to

---

[4] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

her first point on appeal.[5] The ALJ discussed both severe and non-severe impairments, and he incorporated the state-agency medical experts' opinions about Roach's impairments. (Tr. at 14-17, 22-23). The ALJ discussed how her impairments affected her daily life, as well as the nature or her pain, objective testing, and her treatment. He wrote that he considered all of Roach's impairments in combination. (Tr. at 14). He assessed RFC limitations based on his review of the impairments in the record. Roach has not shown that her impairments were disabling. The ALJ did not err at Step Two.

Roach also argues that the ALJ should have included additional mental and physical limitations in the hypothetical he posed to the VE at Step Five.[6] She says that her crying spells would cause absenteeism that would prevent work. The ALJ did acknowledge her crying spells in his analysis or her mental impairments, but twice in 2020 and once in 2021 she denied crying spells. (Tr. at 19, 546, 651, 673).

---

[5] See *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994)(ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work).

The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 456 F.3d 890, 894 (8th Cir. 2006).

[6] The ALJ may meet his burden at step five by eliciting testimony from a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

The ALJ also noted generally normal mental status examinations, as well as Roach's ability to perform daily activities. She has not shown that the ALJ should have included her tendency toward crying spells as a restriction in the hypothetical posed to the VE.

Roach also argues that she had an extremely limited ability to sit or stand, but the state-agency specialists found she could perform light work. (Tr. at 22). The ALJ discussed physical examination findings and objective evidence and arrived at an RFC for light work, consistent with the specialists' opinions. Roach has not shown error. The ALJ properly examined the VE and proposed a hypothetical that reflected accurately Roach's limitations.

Finally, Roach makes a cursory that the ALJ did not conduct a PRT analysis as required by the Administration's regulations.[7] The state agency psychiatric specialists conducted thorough PRTs, finding mild-to-moderate limitations from mental impairments. (Tr. at 16-17, 22). The ALJ discussed these findings and created

---

[7] The PRT rates a claimant's degree of functional mental limitation in four broad areas: understanding, remembering, and applying information; interaction with others; concentrating, and persisting and maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a. The standardized PRT form is now used only at the initial and reconsideration levels; at the ALJ hearing and Appeals Council levels, documentation of the application of the PRT is in the decision itself, rather than on a separate form. *Id*. If a psychological examiner completed a form before the hearing and the ALJ discussed the technique within the decision, the ALJ has met the requirement for assessment of mental impairments. *Id*.; *Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir. 1994); *Craig v. Astrue*, 2013 U.S. Dist. LEXIS *16 (W.D. Ark. February 25, 2013).

an RFC limiting Roach to simple work. He fairly and fully considered Roach's mental impairments.

**IV.** **<u>Conclusion</u>**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ considered all of Roach's impairments, including those found on the PRT, and he did not err at Step Five. The finding that Roach was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 5th day of February, 2024.

_____
UNITED STATES MAGISTRATE JUDGE